*Charles F. Richards* and *Jacob Moore*, for the defendant.

———•———

### SAMUEL P. TRUAX *v.* WILLIAM W. PARVIS.*

*Replevin—Venue—Demand—Additions to Contract—Remedies in a Conditional Sale.*

In an action of replevin the place not being "material or traversable" the venue need not be averred or proven.

Where the taking was wrongful in the first instance, no previous demand is necessary for the maintenance of the action of replevin; but where the original taking was lawful but further detention of the property is unlawful, there must be a demand by the plaintiff upon the defendant and a refusal by him to comply therewith. No specific words need be used, but any language which is understood to be a demand on the part of the plaintiff and reply that was understood to be a refusal will be sufficient.

A new stipulation, added to a closed contract, made in the proper manner, before the separation of the parties, and intended to form part of the contract, will be so treated. It is a contemporaneous writing about the same subject matter, and when so intended is part of the original.

A person having sold personal property upon conditional sale, taking judgment notes for the price thereof, must make his election between his two remedies, and if he rely upon the notes for the purchase price, he thereby abandons his right to retake the property as secured by the contract of sale.

(*Kent, May 4, 1886.*)

ACTION OF REPLEVIN for a four-year-old colt, sold and delivered by the plaintiff to William S. Grasley, taking two judgment notes for one hundred and fifty dollars, the price; the horse to be the property of the plaintiff until the notes should be

---

* NOTE.—See this cases decided in the Court of Errors and Appeals and reported hereinafter.

paid. One of the notes was at four months for seventy-five dollars, and the other at six months for seventy-five dollars, dated April 18th, 1884. On the back of the last mentioned note was the following endorsement:

"Smyrna, April 18th, 1884, this day have bought of Samuel Truax, one bay colt, four years old, the said colt belongs to him until these two notes are paid."

Signed, ' W. H. Grasley."

The horse was afterwards levied on and sold by the sheriff as the property of Grasley, on the 9th day of October, 1884, and bought by James P. Barcus, who afterwards sold him to the defendant from whom the horse was demanded by the plaintiff without success prior to the commencement of this action. The plaintiff before the maturity of the notes assigned them to William B. Smithers in payment of a debt he owed him, but afterwards redeemed them from him.

*James Pennewill,* for the defendant, moved a non-suit, on the ground that the plaintiff had failed to prove the taking of the property in this county, or that the cause of action arose in it.

THE COURT refused the motion.

*J. Alexander Fulton,* for the plaintiff:

No money to this day has been paid on either of the two notes, cites, and reads from 5 Hous., 192.

*Pennewill :* I admit the law ruled in the case cited, but I contend that by the absolute assignment of the notes to Smithers in payment of a debt due him, the same were then paid to the plaintiff and he thereupon ceased to have any right of property in it pursuant to the terms and the condition of the sale.

*James L. Wolcott,* on the same side : This is a local action, and is not changed by our statute. The declaration in it is in the common law form strictly. It lies for the wrongful taking of personal property and not only for a wrongful distress for rent, or damage feasant. *Gilbert on Law of Replevin,* 157 ; 5 Rep., 107 ;

7 Rep., 80, 81; 7 Johns, 140; Stephen, Pl., Sec. App., note; 2 Greenl. E. Sec. 562.

Our statute simply enlarges or extends the remedy to a wrong ful detention as well as the wrongful taking of goods without at all changing the character or nature of the action. *Windsor v. Boyce*, 1 Houst., 605; 2 Saund. Pl. & Ed., 767; 1 Tat., 53; *Cannon v. Horsey*, 1 Houst., 440; *Cann v. Wowen*, 1 Houst., 188; *Alderdice, et al. v. Truss, et al.*, 2 Houst., 268. The proof of the demand was not sufficient. In fact according to the testimony of the plaintiff himself, which is the only evidence we have on that point, as he was apprehensive if the defendant should suspect that he was about to proceed to recover the horse that from him, he would at once dispose of him or hurry him out of his reach, he was afraid to make a positive demand on him for the horse; and therefore what he said when on that occasion according to his statement of it, was no demand at all, but was more in the nature of a request merely for the return of it and was manifest that the defendant so understood it, for his reply to it was that he could not spare it. And as a refusal to surrender him, it was quite equivocal, as was the demand of the plaintiff for the surrender of it to him.

The defendant asks that the following instructions be given to the jury:

*1st.* That the action being local and the venue not proven, the plaintiff is not entitled to recover.

*2d.* That it must be proven that there was a positive demand and refusal before the replevin writ was issued, otherwise plaintiff is not entitled to recover.

*3d.* If the jury believe the agreement for conditional sale was signed after the terms of sale were complete; or that said agreement was a mere afterthought and voluntary act of William H. Grasley; or that said agreement was merely for the benefit of said Grasley and designed to protect the horse from his creditors, the plaintiff is not entitled to recover.

*4th.* It is for the jury to say whether plaintiff did not by the absolute assignment of the two notes, or by the transfer of all his claim—as mentioned in the postal card—or by other action or conduct, waive any condition which may have been connected with the original sale.

*Fulton,* for the plaintiff: I admit that replevin was originally a local action, and the reason was it related to real actions, but since the statute, when the wrongful detention of the goods merely constitutes the ground of action, it is a transitory action. But why is all this strife over the venue, for it was proven on the trial, on the question of sale, it was enough to say that in this case there never was any sale which transferred the absolute property, or anything more than a special or conditional property in the horse to Grasley, according to the express terms of the contract and conditional sale agreed upon between him and the plaintiff. And therefore ruling in the case of *Alderdice et al. v. Truss et al.,* cited from 2 Houst., has no application in this case.

COMEGYS, C. J., charging the jury:

We decline to give the first instruction. Although it is true of the action of replevin as we find its office, or chief purpose (the return to a plaintiff of property distrained for rent, or damage feasant) treated of in the books, that it is a *local action* and therefore must be brought in the county where the injury was done, be alleged in the narr to have been done there, and proof thereof made at the trial; yet having been extended particularly in this country, to illegal taking of personal property under any circumstances against the owner's consent, and being in fact a very familiar, and in truth the only action where the very goods *in specie* can be recovered which were tortiously taken, it would seem most reasonable that it should, as to such cases, be no longer treated as a local action—especially, using the language of Blackstone, as the injury could as well have been done in one place as another. This question has only arisen in three cases, we think; in that in Zabriskee's Reports (New Jersey) in that Watts (Pennsylvania) and in the case of *Windsor v. Boyce,* 1 Houston, 615.

In New Jersey the decision was that the action, as for the cause in that case, was still local; in Pennsylvania it was held the contrary; and in this State, the point was made (in an action for taking away a slave) but was not decided—the plaintiff having failed to prove either a tortious taking, or an unlawful detention, one or the other of which was necessary to his action. That being sufficient ground for non-suit, the Court placed it upon such ground

not passing upon the point of materiality of averment and proof of venue. The plaintiff's counsel in that case quoted the 12 Section of Chap. 106 in the Rev. Code about pleading and practice. Aside from the argument that the adaptation of an old form of proceedure, or process, to a new subject matter, ought not, necessarily to impress every characteristic of that form upon such subject matter where there would be incongruity or unfitness in so doing, it is by no means unreasonable to think that the section referred to applies, and was meant to apply, to just such cases as the present. In what I think may not unfitly be called the *reform chapter* of the Code (Chap. 106, of Pleading and Practice in civil actions) that section is to be found in these words—" It shall not be deemed necessary in any declaration, or other pleading, to lay the venue in the county in which the action is brought, nor to set forth in any manner the place in which an act is alleged to have been done, unless when, from the nature of the case, the place may be material or traversable." This seems to be very unequivocal language, without any ambiguity or uncertainty about it. It was, when introduced into our system by the Revisers of 1852, entirely new to it: there was nothing like it here, before that time. One of the objects of the revision of the laws as understood and observed by them, was certainty of expression so as to avoid, if possible, future contentions about meaning. It would seem they fully attained that object in the language used in this section. They must be supposed, as a body at least, to have intended something other than *form of action* when they used the words " nature of the case "—as one expression has a definite unequivacal meaning, and the other is like explicit. " What is your form of action," would not be answered by saying, " a tortious taking of a horse," no more than the inquiry, " what is the nature of your case," would be responded to by saying—" replevin." The form in which a suit is brought, and the subject matter of it, or its cause of action, nature of its case, are totally distinct subjects. The section would seem to have been intended to dispense with any statement of venue, or proof of it in any suit except where the facts or *nature of the case,* show that the suit has (where the form for example is trespass, or case) relation to, or is in some way connected with, the realty.

Without intending, however, to decide the question definitely, it is sufficient to say that as we declined to non-suit the plaintiff at the close of his case for alleged want of proof of venue, so now we refuse to give the jury the instruction the defendant prays for. Besides, it would be improper to do so, in view of the fact that the plaintiff contends, though disputed by the defendant, that he proved the alleged demand and refusal to have been made on the defendant in this county. That is for the jury.

With respect to the said prayer for instructions we say to the jury—that where the taking has been a wrongful one in the first instance, no demand is necessary for the maintenance of the action of replevin; but where it was originally lawful, as in this case, and yet it is claimed that further detention of the property is unlawful, before the action can be brought to recover the specific thing detained, there must be a demand by the plaintiff upon the defendant for it, and refusal by him to comply therewith. Although such demand and refusal are requisite, yet the law does not require any form of words for either. Neither the word *demand,* nor the word *refuse* is necessary to be used; but any words will suffice, provided they are understood by the parties to be a claim of property on one side and to have it delivered to the claimant, and refused so to deliver. It is common enough for a party holding another's obligation, for example, to present it and say, " I should like to have the money on this." No doubt, a debtor well enough understands what such a communication means. This, however, is entirely a question for you. If you believe the language used by Truax to Dr. Parvis was intended by him for a demand of the horse, and was so understood by the latter, and that his reply was intended as a refusal and to be understood by Truax, then the law has been complied with, and demand and refusal proved.

The third prayer calls upon us to instruct you that the agreement written on the back of the note payable on the 18th of October, 1884, was no part of the contract of sale, which was complete without it; and being no part, the sale was absolute, and not conditional. An absolute sale is one where the property in personal chattels (as is this case, the horse) passes to the buyer upon the completion of the bargain, or treaty between the parties. Where one party offers to sell at a certain price, and the other agrees to give it,

there is a complete bargain and sale, and the property passes from the bargainor to the bagainee. Such was the case of *Alderdice v. Truss*, cited by the defendant's counsel as having been decided by this Court. But though the property passes, delivery cannot be required until the money is paid where the sale is for cash. Where it is upon a credit, to be secured by notes, or other instruments, they must first be delivered, or tendered. In this case, there was an agreement to sell, and price fixed. So far, so good. But there was also an understanding, as part of the treaty of sale, that there should be a credit of four and six months by two notes of equal amounts, for the purchase money. The parties went to Truax's house to close the bargain by the notes. They were drawn by Grasley, and submitted to and read by Truax, who approved them and they were handed back to Grasley, who placed them on the table. Almost as soon as this was done, Grasley suggested that for greater security to Truax, he, Grasley, would sign a writing that the horse should not be his, until the notes were paid. This was assented to, and accordingly Grasley wrote the language on the back of the note last payable. Upon this being done, the parties left the house and proceeded to the stable where the delivery of the horse was formally made to Grasley. The plaintiff contends that the act of making and signing the writing on the back of the note, made the sale in this case conditional—that is that Truax had the right to retake the horse upon non-payment of the notes. The defendant denies this, and insists that the agreement was an independent act and does not impress upon the sale the character of a conditional one. While the question is not one altogether free from difficulty, still we think that everything that was done upon the occasion of closing the negotiations, should be treated as part of them, as they were simultaneous. It is true that when the notes were drawn up, signed, read by Truax and approved, the original understanding or bargain was complete, and Grasley could then have demanded the horse and no right to refuse delivery would have existed; yet the proposal of Grasley with respect to ownership, accepted by Truax, in effect opened the agreement, and added a new term to it—just as a new stipulation, added to a closed contract, made in the proper manner, before the separation of the parties and intended to form part of it, is treated to be part of it.

It is a contemporaneous writing about the same subject matter, and where so intended is part of the original. In this view, we decline to give you the instructions in question. Of course if there were any proof that Truax knew this agreement was a sham, and was intended for Grasley's benefit and to cheat his creditors, it would have no effect; we have heard none.

With respect to the 4th and last prayer for instructions, we yield to it so far as to say—that if you are satisfied that by the assignment of the notes by Truax to William P. Smithers, he intended to. make an election, or choice, between his two remedies for his protection in the sale of his horse, and chose to rely upon the notes for the purchase price rather than the right to retake secured by the contract of sale, he must be held to that choice, and fail in this action. At the same time, however, you must take into account, as an element in deciding what he really intended, that, notwithstanding the assignment he still remained liable upon them in the event of Grasley's insolvency, which in fact was shortly developed. In fact the assignment was not made until two days after he was sold out by the sheriff.

As to the postal card, offered in evidence by the defendant, it cannot be held to defeat this action, the cause of which having been transferred to Isaac Truax, is to be treated as subsisting for his benefit.

Verdict for the plaintiff.