STATE of Delaware, Plaintiff,

v.

William BENDER and Louis Laws, Defendants.

Supreme Court of Delaware.

May 26, 1972.

---

Jerome O. Herlihy, Chief Deputy Atty. Gen., Wilmington, for the State.

Richard G. Elliott, Jr. of Richards, Layton & Finger, Wilmington, for defendants.

WOLCOTT, C. J., CAREY, J., and STIFTEL, President Judge, sitting.

WOLCOTT, Chief Justice:

This matter is a Certification in a criminal action. The two defendants have borne the burden of the attack on the constitutionality of an amendment to Article I, § 4 of the Constitution, Del.C.Ann. by action of the General Assembly's process of amendment conferred by Article XVI, § 1.

Three questions are certified to us as follows:

"1. Can Article 1, "Bill of Rights", of the Constitution be amended by action of the General Assembly pursuant to Article 16, § 1?

"2. Was the amendment to Article 1, § 4 of the Constitution of 1897, approved by the General Assembly pursuant to Article 16, § 1 on March 9, 1933, effective?

"3. If the answer to question 2 is negative, what laws govern the procedure for selecting members of the Grand Jury in and for New Castle County and what laws govern the vote requirements necessary for said Grand Jury to return a true indictment?"

The facts giving rise to the questions certified are as follows:

The Constitutional Convention of 1897 approved as Article I a Bill of Rights basically similar to the Bills of Rights of the Constitutions of 1776, 1792 and 1831.

Article I, § 4, as approved by the Constitutional Convention, was solely in the following language: "Trial by jury shall be as heretofore." On March 22, 1933 (38 Laws, Ch. 3), the General Assembly, pursuant to the authority conferred upon it in Article XVI, § 1 by two successive General Assemblies, amended Article I, § 4 of the Bill of Rights by adding the following proviso:

"Provided, however, that Grand Juries in New Castle County shall consist of fifteen members, one of whom shall be selected from, and shall be a resident of, each representative district in said county, and the affirmative vote of nine of whom shall be necessary to find a true bill of indictment; and the Grand Juries in Kent County and in Sussex County shall consist of ten members, one of whom shall be selected from, and shall be a resident of each representative district in the County in which he or she is selected, and the affirmative vote of seven of whom shall be necessary to find a true bill of indictment."

The Bill of Rights of the Constitution of 1897 is followed by a reserve clause preceding Article II in the following language:

"We declare that everything in this Article is reserved out of the general powers of government hereinafter mentioned."

The identical reserve clause follows the Bills of Rights of the Constitutions of 1792 and 1831. By Article 30 of the Constitution of 1776, the following reserve clause was included:

"ART. 30. No article of the declaration of rights and fundamental rules of

this state, agreed to by this convention, nor the first, second, fifth (except that part thereof that relates to the right of suffrage) twenty-sixth and twenty-ninth articles of this constitution, ought ever to be violated on any pretence whatever. No other part of this constitution shall be altered, changed or diminished, without the consent of five parts in seven of the Assembly, and seven Members of the Legislative Council."

The basic argument made in behalf of the defendants is that the General Assembly has no power without consent of the people to amend the provisions of the Bill of Rights.

Article XVI, § 1 authorizes amendments to the Constitution to be proposed in the General Assembly and, if agreed to by two-thirds of all the members of each House, requires the Secretary of State to publish the text of the amendment in the newspapers three months before the next general election. If the General Assembly elected at that general election agrees to such proposed amendment by a two-thirds vote of all the members of each House, the amendment thereupon becomes part of the Constitution.

By Article XVI, § 2 of the Constitution, the General Assembly is authorized to submit to the people the question of whether or not a constitutional convention should be assembled for the purpose of revising the Constitution. In the event the answer of the people to this question is in the affirmative, the General Assembly is then authorized to convene a constitutional convention and the method of convening such a convention is set out in Article XVI, § 2. There is, however, no provision for the submission of the product of the constitutional convention to the people for approval or disapproval.

While there is no provision in Article XVI, § 2 for the submission of the product of the work of a constitutional convention to the people, there is, by reason of Article XVI, § 1, provision for an indirect submission to the people of a proposed amendment to the Constitution passed by the General Assembly. This results from the requirement of publication by the Secretary of State of any proposed constitutional amendment three months before the holding of a general election, to be held between the final adjournment of the originating session of the General Assembly and the convening of the General Assembly to be elected at the intervening general election.

The theory of this requirement, made clear by the delegates of the constitutional convention, is that the people, being made aware of a proposed amendment, can then judge which candidates for election to both Houses of the General Assembly are in favor of the view the individual voter takes toward the proposed amendment. This is the only means provided in the Delaware Constitution for submission to the people of any change in the Constitution. In this respect, Delaware differs from all of the other States of the Union which do require approval by the people of proposed changes in their constitutions.

This, however, does not answer the precise questions certified to us. The fundamental issue before us is the effect of the so-called reserve clause following the Bill of Rights. It is to be noted that the provisions of Article I, that is, the Bill of Rights, are reserved out of "the general powers of government." There is little case law on the proper construction of the reserve clause. About the only case in point is State v. Cox, 8 Ark. 436 (Sup.Ct. 1847) construing a reserve clause almost similar to that contained in the Delaware Constitution except for the phrase in the Arkansas Constitution that the Bill of Rights "shall forever remain inviolate".

The Supreme Court of Arkansas held that the General Assembly, acting to amend the Constitution, was not acting within the general powers of government, and upheld an amendment by the General Assembly affecting the Arkansas Bill of

Rights as a proper exercise of the amendatory process. As a matter of fact, the scheme of amendment of the then Arkansas Constitution was almost precisely similar to the provisions of Article XVI, § 1 of the Delaware Constitution.

Later, the *Cox* case was overruled in Eason v. State, 11 Ark. 481 (Sup.Ct.1851) when the members of the Arkansas Supreme Court had become different. The reason for the overruling was the language, "and shall forever remain inviolate". It is to be noted that the reserve clause of the Delaware Constitution contains no such language.

In Jameson, A Treatise on Constitutional Conventions (4th Ed. 1887), the author disagreed with the conclusion reached in the *Eason* case and submits that the decision in the *Cox* case was the proper interpretation of the reserve clause.

■ We agree with the reasoning of the *Cox* case and with Judge Jameson to the effect that the exercise by the General Assembly of a constitutionally conferred authority to amend the Constitution is not the exercise of "a general power of government". It is rather, we think, the General Assembly engaging in a very "special" power which, by its mode of exercise, is required by the Constitution to ultimately reflect the mind and will of the people through their election of members of the next General Assembly who must finally pass upon the proposed amendment.

Article XVI, § 1 does not distinguish in any way between amendments to Article I, the Bill of Rights, on one hand, and amendments to any other articles of the Constitution. If such a limitation had been intended, it would have been a very easy matter for the delegates to the Constitutional Convention of 1897 to have spelled out such a significant distinction in Article XVI, §§ 1 and 2. The reserve clause is in fact rather ambiguous, and its precise meaning is lost in the mists of time. We cannot conclude, therefore, that the argument made in support of the lack of authority in the General Assembly to amend the Bill of Rights by reason of the necessity of submitting such an issue to the people must be followed by this Court.

Most, if not all, of the authorities from other States cited in behalf of the defendants deal with situations where the State Constitution, itself, required the submission to the voters for approval of proposed amendments to the Constitution. As we have pointed out, there is no such requirement in the Delaware Constitution other than Article XVI, § 1.

The defendants cite Rice v. Foster, 4 Harr. 479 (1848) and State v. Allmond, 2 Houst. 613 (1871) in support of their argument. We think, however, these two cases are inapposite since they did not deal with a purported amendment to the Constitution of the State, itself, but dealt solely with the enactment of legislative acts which were held to be contrary to the provisions of the Constitution. There is, to be sure, dicta in both opinions which colorably support the defendants' arguments but, in fact, these dicta must be read in the light of what the court was actually considering, viz., the constitutionality of a legislative enactment.

■ Moreover, we point out that the amendment to Article I, § 4 which guarantees the right to trial by jury did not abolish the right to trial by jury. What the 1933 amendment actually did was merely to change the mechanics of the drawing of the Grand Jury, reduce its size, and to require a different number of Grand Jurors to concur in an indictment. The common law rule that an individual be indicted only upon the affirmative vote of 12 members of a Grand Jury of 24 does not rise, in our opinion, to the height of a constitutional guarantee.

By reason of the foregoing, therefore,

Question No. 1 is answered in the affirmative;

Question No. 2 is answered in the affirmative;

Question No. 3 need not be answered since it was presented solely if the answer to Question No. 2 was negative.