Cornelia HOPKINS et al., Petitioners,

v.

JUSTICE OF the PEACE COURT NO. I
of the State of Delaware et al.,
Respondents,

and

Robert B. ATKINS, Real Party in Interest.

Superior Court of Delaware,
Sussex.

June 13, 1975.

Gary A. Myers, Community Legal Aid Society, Inc., Dover, for petitioners.

Charles Snyderman, Deputy Atty. Gen., Wilmington, for respondents.

## OPINION

WALSH, Judge.

Petitioners, residents of Sussex County, are tenants of certain rental properties located near Millsboro, Delaware. They seek a writ of prohibition to prevent their landlord, Robert B. Atkins (Atkins) from prosecuting four landlord-tenant actions against them in a Justice of the Peace Court, under the provisions of 25 Del.C. § 5701 et seq, which provides a Summary Possession proceeding. Upon the filing of Atkins' claim in the Justice of the Peace Court, the petitioners appeared, raised various defenses and inter alia demanded a trial by jury. Upon the denial of the latter request, they initiated this action to prevent the Respondent Justices of the Peace from exercising jurisdiction of Atkins' claims without affording them the right to trial by jury as guaranteed by Art. I, § 4 of the Delaware Constitution, Del.C.

Ann. Atkins has not appeared in this Court to contest the issuance of the writ, but the State Department of Justice has appeared on behalf of the respondents in defense of the statute and the jurisdiction conferred thereby. Both sides have moved for summary judgment.

The issue posed in this proceeding resulted from the enactment on June 29, 1972, of the Delaware Landlord-Tenant Code 25 Del.C. §§ 5101–7014. The Code represented a sweeping modernization of a myriad of laws touching the legal relationship between landlords and tenants. Included in the array of statutory changes, was the express repeal of the Forcible Entry, Detainer and Holding Over Statute (10 Del.C. §§ 9651–9673) which had governed tenant eviction proceedings with minor modification since 1852. A tracing of the development of the so-called "holding over" action is essential to an understanding of petitioners argument.

At common law, and in Delaware prior to 1793, a landlord seeking to recover leased premises relied upon an action of ejectment, a convoluted approach which required the landlord to establish a fictitious dispute of title. Pernell v. Southall Realty, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). 3A Thompson on Real Property, § 1370, p. 719. Ejectment actions were historically triable to a jury. In 1793, a statutory eviction proceeding was enacted in an effort, in the words of the statute's preamble, to prevent tenants from "unjustly obliging the lessors or landlords, at a great expense, to bring ejectments," (2 Del.L.Ch. XXXIX, § 12).

The 1793 Act, while conferring jurisdiction on Justices of the Peace, provided for the summoning of "twelve substantial freeholders" who together with the justice would determine the right to possession as well as assess damages for unjust detention. In 1827, the eviction procedure was modified to accommodate forcible entry and detainer actions but retained participation of a jury who solely determined "the

credibility of the witnesses and the effect of the evidence" (7 Del.L. Ch. XXXIV, § 9).

In 1852, further modifications took place, the most important of which, for present purposes, made trial by jury optional at the request of either party (Ch. 101, Revised Statutes 1852). In 1871 the General Assembly reduced the number of jurors available in summary eviction proceedings from twelve to three. (14 Del.L. Ch. 86). Thus at the time of the adoption of the present State Constitution (1897) such proceedings were triable before a jury of three persons and remained so until the 1972 statute here under attack.

Underscoring the significance of a jury trial before a Justice of the Peace in summary eviction proceedings prior to the 1972 Act was the unavailability of a trial *de novo* through appeal to the Superior Court, either directly or by transfer from the Court of Common Pleas when the latter exercised concurrent jurisdiction. *Wallen v. Collins,* Del.Super., 6 W.W.Harr. 266, 173 A. 801 (1934). As the Court noted in *Wallen* "the Superior Court has no jurisdiction over this type of action as a common law action" and the availability of a jury trial at the Justice of the Peace level insured a "speedy determination" in keeping with the purpose of the statute. Conversely, the availability of a trial *de novo* before a jury in the Superior Court on appeal has been recognized historically as satisfying the constitutional guarantee where trial by jury had been initially denied before a Justice of the Peace. *Wilson v. Oldfield,* Ct. Comm. Pleas, 1 Del. Cases 622 (1818).

■ The 1972 Act had for its stated purpose "to simplify and clarify the law governing landlord and tenant relationships," and * * * "to revise and modernize the law of landlord and tenant" (58 Del.Laws, Ch. 472, § 5102). To this end the Act imposed sweeping substantive and procedural changes in the reciprocal obligations arising under leases, oral or written, and the enforcement of the same through a "summary" or "special" proceeding. The Act provides that "triable issues of fact * * * shall be tried" by the Justice of the Peace Court in the County where the property is located, which "shall enter a final judgment determining the rights of the parties" (25 *Del.C.* § 5701, 5710, 11). "A party aggrieved by the judgment rendered in such proceeding may request * * * a trial de novo before a special court comprised of 3 other justices of the peace, which shall sit in the same court and render final judgment, by majority vote * * *" (25 *Del.C.* § 5713). The landlord is given the right "to sue for both back rent and eviction at the same hearing" (25 *Del.C.* § 5714(e)). Upon the rendition of a "final judgment for plaintiff" the court "shall issue" a warrant to effect the landlord's repossession. The Act is silent concerning further appeal and while, presumably, a writ of certiorari, is available, this remedy is limited to a jurisdictional, not a factual review. *Kowal v. State,* Del.Super., 10 Terry 549, 121 A.2d 675 (1956); 1 *Wooley's Delaware Practice,* § 899, & 900, p. 627.

Respondents argue that the summary proceeding for possession authorized by the 1972 Landlord-Tenant Code is a new and distinct remedy which unlike the common law ejectment action, did not exist "heretofore" and thus imparts no jury requirement.

It is clear from the history of the repossession statute that its origin lies in the common law action of ejectment. For over one hundred eighty years a summary repossession proceeding has existed within the jurisdiction of the Justices of the Peace, with one essential element intact— the right to demand trial by jury. Since the identical operative language: "Trial by Jury shall be as heretofore" appears in Section 4, Article I (the Bill of Rights) of

three successive Delaware Constitutions[1] —1792, 1831 and 1897, it could be argued that the common law concept of a jury of twelve persons became immediately engrafted with the result that the 1871 amendment reducing the eviction jury from twelve to three is invalid.

■ The history of the eviction statute militates against a determination that a succession of constitutional language mandates a jury of twelve. The three man jury mechanism remained in effect for more than one hundred years without apparent question or attack both before and after the Constitutional Convention of 1897. The practice thus had the tacit if not express approval of the Constitutional Convention which, had it been so inclined, could have prohibited the practice. Indeed, the Constitutional Debates reveal that the word "heretofore" was intended to cover "a condition of affairs as had priority of existence" *Constitutional Debates of 1897,* Vol. 4, pp. 2389–90. There is support for the view that Article I, Section 4 does not forbid constitutional modification of trial by jury through reduction of size or voting mechanics. *State v. Bender,* Del.Supr., 293 A.2d 551 (1972). While *Bender* dealt with a constitutional amendment to the grand jury provisions of Section 4, its importance lies in the holding that the "Bill of Rights" can be amended by the General Assembly without submission to the people. *A fortiori,* it would appear that the tacit approval of a Constitutional Convention is of utmost significance.

■ When one looks at the substance not the mere form of the Landlord Tenant Code it is obvious that the summary remedy under § 5702 although embellished with other grievance solving devices, was intended as the primary mechanism for the resolution of landlord tenant disputes over possession of real property. It thus embraces litigation traditionally triable before a jury and it is the nature of the proceeding rather than its designation which determines whether it is traditionally triable by jury. *In Re Markel,* Del.Supr., 254 A. 2d 236 (1969). Even if a statute is silent on the method of adjudication where property rights are at issue a party asserting a special ownership by virtue of the statute, or defending against such assertion, is entitled to a trial by jury. *State v. Rossitto,* Del.Supr., 331 A.2d 385 (1974); *State v. Fossett,* Del.Super., 134 A.2d 272 (1957). That entitlement is patently ignored under those provisions of § 5702 and § 5713 of the Act which permit a summary proceeding to embrace a claim for debt or for money damages, matters historically triable before a jury.

Respondents, while conceding that certain provisions of the Act are of questionable validity, argue that the Court should be reluctant to strike down a statute of obvious good purpose which was intended to modernize and reform the time encrusted law of landlord and tenant. Moreover, it is contended, if there is a construction available which will save the statute it should be pursued to the rejection of one which will result in its destruction. *Collison v. State,* Del.Supr., 9 W.W.Harr. 460, 2 A.2d 97 (1938). Seizing upon the language of § 5710, respondents assert that trial to the "Court" may in its broadest sense, include a Court and jury as was held in *Mills v. State,* Del.Supr., 256 A.2d 752 (1969). In *Mills,* the requirement of a jury trial to secure the release of a criminally committed patient was implied on an equal protection basis because of its availability to a civilly committed mental patient. Moreover, the Court found nothing in the language of the statute there under consideration which was inconsistent with the use of a jury trial in the Superior Court—a forum traditionally affording

---

1. The Constitution of 1776, Article 25, continued in force the "common law of England" and prohibited the Legislature from altering such parts as were embraced in the Declaration of Rights, Section 13 of which refers to "trial by jury of facts where they arise" as "one of the greatest securities of the lives, liberties and estates of the people."

such right in a broad spectrum of cases. No such straining can assist the summary proceeding under § 5702. To begin with, trials before Justices of the Peace were historically non-jury, with holding-over actions prior to the 1972 Act a notable and long recognized exception. Trials by referees in debt actions before Justices of the Peace were expressly abolished in 1971 (58 Del.L. Ch. 194). Additionally, the "appellate" procedure set forth in § 5713 refers to a "special court comprised of 3 *other* justices of the peace"—in clear contradistinction to the initial role of the trial justice. Finally, the rules governing civil actions in the Justice of the Peace Courts provide no general procedural framework out of which a jury provision might be fashioned. Indeed, Rule 14 provides: "All trials shall be heard before a Justice of the Peace without a jury except when the trial by referees shall be provided by statute."

Despite its laudable purpose the Landlord Tenant Act of 1972, to the extent it denies a litigant in a summary proceeding under § 5702 trial by jury in the form which existed at the time of the adoption of the Constitution of 1897, is unconstitutional. Such infirmity, however, extends only to those procedures embraced in Chapter 57 of Title 25 which specifically infringe that right since the provisions of

the Code are severable (58 Del.L. Ch. 472 § 2). No other provision of the Act is here under attack and the authority of the General Assembly to legislate generally in the area of tenancies is clearly established. *Makin v. Mack,* Del.Ch., 336 A.2d 230 (1975).

Nor does this determination of unconstitutionality limit the jurisdiction of Justices of the Peace in summary proceeding actions where a waiver of trial by jury by all parties is established of record. Since such a waiver is a jurisdictional prerequisite its execution must take place upon initial appearance.[2]

A writ of prohibition should be used with caution and not in doubtful cases. *Knight v. Haley,* Del.Super., 6 W.W. Harr. 366, 176 A. 461 (1934). Yet, where it is clear that an inferior court has exceeded its jurisdiction or exercised powers beyond its authority, the writ should issue as a preventative measure. *Matushefske v. Herlihy,* Del.Supr., 214 A.2d 883 (1965). The petitioners have demonstrated an entitlement to the writ as the only remedy available to prevent the denial of trial by jury. Accordingly, the rule is made absolute.

It is so ordered.

---

2. The enactment of a statute or Rule of Court fashioned after 10 *Del.C.* § 1320 which provides a method for automatic transfer of cases from the Courts of Common Pleas to the Superior Court should be considered.