**ALLSTATE INSURANCE COMPANY and Aimee Sann, Plaintiffs,**

**v.**

**ROSSI AUTO BODY, INC., Defendant.**

**Civ. A. No. 00C–06–079–JOH.**

Superior Court of Delaware,
New Castle County.

Submitted: Aug. 18, 2000.
Argued: Aug. 31, 2000.
Decided: Oct. 23, 2000.
Revised: Jan. 12, 2001.

Arthur D. Kuhl (argued) of Michael A. Pedicone, P.A., Wilmington, for plaintiff Allstate Insurance Company.

Stephen B. Potter (argued) of Potter, Carmine & Leonard, P.A., Wilmington, for plaintiff Aimee Sann.

---

**19.** Restatement (Third) *Property (Servitudes)* § 2.16 cmt. h, illus. 19 (Tentative Draft No. 3, 1993).

Christopher J. Curtin (argued) of Erisman & Curtin, Wilmington, for defendant Rossi Auto Body, Inc.

## O P I N I O N

HERLIHY, Judge.

Plaintiffs Allstate Insurance Company and Aimee Sann have filed an action in replevin, for declaratory judgment and for damages for automobile repair fraud against defendant Rossi Auto Body, Inc. Sann's vehicle was involved in an automobile accident. It was towed and ended up with Rossi, which claims it had authority to make certain repairs. Whether it did or how much was authorized is part of the dispute. Apparently, Rossi made some repairs, but later Allstate determined Sann's vehicle to be totaled. Allstate tendered a check to Rossi for repairs which Rossi said was insufficient. It refused to release Sann's car and asserted a garagemen's lien for the amount it contends is owed. This act prompted plaintiffs to file their action, including for replevin.

Rossi, however, points to statutory language which grants exclusive original jurisdiction to the Justice of the Peace Courts over replevin actions in all garagemen's lien cases. It has moved to dismiss plaintiffs' replevin action for lack of jurisdiction. Justice of the Peace Courts, however, do not provide for a jury trial for such replevin actions. The plaintiffs argue that this results in the deprivation of their right to a jury trial protected by the Delaware Constitution.

■ This Court holds that granting the Justices of the Peace exclusive jurisdiction over replevin actions in garagemen lien cases where there is no right to a jury trial violates plaintiffs' right to a jury trial as protected by the Delaware Constitution. Rossi's motion, therefore, is **DENIED**.

## DISCUSSION

■ There is a presumption that all statutes are constitutional.[1] In addition, courts are historically and justifiably reluctant to declare unconstitutional an act of the General Assembly.[2] To understand, therefore, how this Court reached its holding, an analysis of replevin actions and the statutes creating garagemen's liens is necessary. The confluence of these two analyses in the context of the Delaware Constitution compels this Court's holding.

### A

Delaware common law on replevin was described early in the 19th century as follows:

The writ of replevin in our practice is not confined to cases of distress, and to the tortious taking of property, but is used wherever one man claims property in the possession of another and prefers proceeding in rem for the purpose of obtaining possession of the specific property, rather than compensation in damages for its loss.

\* \* \*

If the defendant, upon making claim of property, does not give the requisite security, the sheriff replevies the goods as if no such claim has been made; delivers them to the plaintiff, and summons the defendant to appear at the return of the writ; and the suit proceeds.

The declaration may be either in the *detinet* or *the detinuit;* that is, the plaintiff may allege, as the case may be, that the defendant still detains the property, in which case damages may be recovered for the *value of the goods,* as well as for the unlawful caption and detention; or he may allege that the

---

1. *Justice v. Gatchell,* Del.Supr., 325 A.2d 97, 102 (1974).

2. *New Castle County Council v. State,* Del. Supr., 688 A.2d 888, 891 (1996).

defendant detained them until the replevin was made, when he can recover only damages for the unlawful caption and detention to the time of the replevin.

\* \* \*

Cases not provided for by the act of assembly stand upon the common law. Under the plea of property, the defendant, if it be found for him, is entitled to judgment for the return of the property (pro retorno habendo) and damages for the taking upon the writ.

\* \* \*

The property for which the writ was brought in this case is ninety-eight and a half bushels of corn, which is a perishable article, and which ipso usu consumitur; and, upon proof made at the trial that the corn had perished or been consumed, the jury might well give a verdict for damages, embracing the value of the corn, of which in such case *the defendant could have no return,* for that is the principle of the rule as laid down by lord [sic] Hale.[3] [Emphasis in original]

In that case, a jury's award of $45.75 in damages was affirmed.[4]

Other early Delaware cases show that replevin actions involved jury trials. One is *Truax v. Parvis,*[5] which is a reporting of a jury charge in a replevin action. One of the issues involved venue. After a plaintiffs' verdict, the defendant appealed. Because the Superior Court judge failed to properly charge the jury on venue, the Court of Errors and Appeals reversed the verdict.[6]

The case of *Maclary v. Turner,*[7] is reported and it, too, is a charge to a jury in a replevin action involving corn and hay. The jury awarded the defendant damages of $239.01 since the property could not be found.[8]

Even though it came after the adoption of the 1897 Constitution, the case of *Hitch v. Riggin*[9] contains a jury charge by none other than Judge Victor Woolley, author of the two-volume authoritative treatise on Delaware law. In *Hitch,* he instructed the jury, in part, that:

WOOLLEY, J. (charging the jury).

\* \* \*

The issue of property in replevin, notwithstanding a plea by the defendant of property in himself, is not whether the property in the chattel is that of the plaintiff or the defendant, but whether the property is in the plaintiff or claimant in the action and whether the plaintiff as such has a consequent right to its immediate and exclusive possession, regardless of the title and property of the defendant.[10]

The replevin action in *Hitch* was to recover a horse. The defendant did not ask for return of the horse but only for a monetary award equal to its value. The jury awarded him $56.33.[11]

When he published his treatise in 1906, Woolley described various features of replevin actions:

---

**3.** *Clark v. Adair,* Del.Ct. Err. & App., 3 Harrington 113, 115–17, 1840 WL 371 (1840).

**4.** *Id.* at 117.

**5.** Del.Super., 7 Houston 330, 32 A. 227 (1886).

**6.** *Parvis v. Truax,* Del.Ct. Err. & App., 7 Houston 574, 586, 32 A. 1050 (1887).

**7.** Del.Super., 9 Houston 281, 32 A. 325 (1891).

**8.** *Id.* at 286, 32 A. 325.

**9.** Del.Super., 80 A. 975 (1911).

**10.** *Id.* at 976 (*citing Ott v. Specht & Spahn,* 8 Houston 61, 12 A. 721).

**11.** *Id.*

The writ of replevin is an original writ. In its nature it is a mixed writ, partly *in rem* and partly *in personam*. Essentially it is a proceeding against the property, the summons to the defendant being accessory and subordinate, so far as the frame of the writ is concerned. The writ is entitled, addressed, tested, signed, sealed and made returnable like other original process, and contains a command to the sheriff to cause the goods and chattels mentioned in it, to be replevied and delivered to the plaintiff. It is in the following form: [12]

The form of which he gave an example was returnable to Superior Court. He continues:

Demurrer, whether general or special, may be filed to a pleading in replevin, for the same causes and under the same principles of pleading as govern demurrers in other forms of action.

When a suit is brought by a joint owner of a chattel for its recovery, and the joint ownership appears in the writ or in the narr, the defendant may demur, or at trial object to the evidence, or call on the court to instruct the jury against recovery. If the fact of joint ownership does not appear in the narr and is not discovered until trial, advantage thereof may be taken by motion for non-suit, or by motion in arrest of judgment. [13]

Later he states:

All other cases not within the provisions of the Act of Assembly, with relation to actions of replevin growing out of questions of rent, stand upon the common law. In such actions each party may be an actor. If the goods have been replevied and at the trial the plaintiff prevail, he is entitled to nominal damages and also his costs, but if the defendant prevail, he is entitled to judgment for the return of his property (*pro retorno habendo*), and damages for the taking upon the writ; or if the property cannot be found, then to damages to the value of the property and his costs, together with such interest as the jury in its discretion may allow.

When the defendant has given bond and retained the property, the verdict of the jury may be either *pro retorno habendo*, that is, for the return of the property, or for the value thereof in money, as the jury may determine. If by the verdict it is found that a part of the goods replevied were the property of the plaintiff, and a part were not, each party must be considered as prevailing to that extent respectively, and the verdict must be in favor of each of them respectively; and as each party has judgment upon it for his damages, either nominal or substantial, he is so far a prevailing party, and must also have his costs.

Where goods replevied have become subject to a lien, the judgment, if for defendant, should be in damages to the full value of the goods at the time they were replevied.

In an action of replevin, damages cannot be recovered for articles not named in the writ, although at the trial, proven to have been taken or detained.

Judgment upon a discontinuance in replevin is not for a return of the property, nor is it such a judgment upon which an inquisition at bar may be held to ascertain the damages suffered by the defendant, but is simply a judgment for costs. The defendant's remedy is on the plaintiff's replevin bond.

The plaintiff in replevin cannot discontinue the action without the defendant concurs, for by his bond he is bound to

---

**12.** 2 Victor B. Woolley, *Woolley's Practice in Civil Actions*, § 1533 (1906).

**13.** *Id.* at § 1543 [citations omitted].

prosecute the suit with effect and to return the goods. A discontinuance of the action by the plaintiff would be a breach of his obligation. But if he suffer a judgment of discontinuance to be entered against him, then the defendant is in no sense deprived of his remedy by the plaintiff's act, but he may proceed against the plaintiff on the replevin bond.[14]

The statutory provision to which he alludes is an action of the General Assembly governing replevin actions in landlord-tenant cases.[15] One theme that runs through the above-cited sections is the mention of a jury trial. Woolley's treatise also refers to replevin actions arising out of a statute creating innkeeper and stable liens.[16]

## B

The statute to which he refers was originally enacted in 1885.[17] It is the initial enactment creating a lien process for hotel keepers, innkeepers or persons who keep livery or boarding stables.[18] It is the precursor of the current garagemen's lien statute at issue in this case, which is now found in 25 *Del.C.* c. 39.

The 1885 enactment starts with this statement:

> That any hotel-keeper, inn-keeper, or other person who keeps a livery or boarding stable and for price or reward at such stable furnishes food or care for any horse, or has the custody or care of any carriage, cart, wagon, sleigh or other vehicle, or any harness, robes, or other equipments for the same, shall have a lien upon such horse, carriage, cart, wagon, sleigh, vehicle, harness, robes or equipments, and the right to detain the same to secure the payment of such price or reward,[19]

Section 2 provides for an action of replevin to recover the detained or seized property. The plaintiff in such an action to regain possession would post surety. The statute provided language for such surety indicating, among other matters, that a writ of replevin had been issued out of Superior Court.[20] No other court is mentioned. Certain common law defenses to replevin actions were retained.[21] The statute went on to provide:

> The judgment of the court if entered for the plaintiff upon the plea of *non cepit* or *non detinuit*, shall be against the defendant for costs and damages for the detention until the time of the replevy, to be assessed by a jury, but if entered for the defendant upon either of said pleas, the judgment shall be against the plaintiff for costs. Judgment, if entered for the plaintiff upon the plea of property in a stranger, shall be against the defendant for costs and damages for detention as aforesaid, but if entered for the defendant upon said plea the judgment shall be against the plaintiff for costs and for a return of the property replevied within ten days, or the value thereof, together with damages for the detention thereof from the time of replevy, such value and damages to be separately assessed by a jury.[22]

In addition, the statute provided:

> If there be judgment of non-suit, or by default, or upon demurrer, or other-

---

14. *Id.* at § 1556 [citations omitted].

15. *Id.* at § 1551 n. 5.

16. *Id.* at §§ 1526, 1560–62.

17. 17 *Del.Laws* c. 620.

18. *Id.* at § 1.

19. *Id.*

20. *Id.* at § 2.

21. *Id.* at § 3.

22. *Id.* at § 4.

wise, without trial by jury, the value of the property replevied, or damages for detention thereof, or the amount due to the defendant for food, care, or custody furnished or bestowed as aforesaid, may be assessed and determined either by a jury at the bar, or upon a writ of inquiry, or otherwise, as the court shall order; [23]

## C

The references to this Court in the 1885 statute merely reflected its preexisting exclusive jurisdiction over replevin actions. There was, therefore, no need to make a specific grant of jurisdiction in the statute. This Court was established in the 1831 Constitution.[24] To a large extent, it succeeded to the jurisdiction of the Court of Common Pleas.[25] This Court was given specific jurisdiction over replevin actions.[26] When the 1897 Constitution was adopted, therefore, this Court's replevin jurisdiction was exclusive.[27] It was not until 1917 that any other court was given any kind of jurisdiction over replevin actions. At that time, Justices of the Peace were given concurrent jurisdiction over any kind of replevin actions, as long as the monetary claim did not exceed $200.[28] Above that amount, this Court retained its exclusive jurisdiction.

The 1885 statute also refers in several places to jury trials. This, too, is consistent with the historic right to a jury trial in replevin actions and the role of juries as shown in the earlier-cited cases and Woolley. There was, therefore, no need to statutorily confer a right which already existed. The preexisting right to a jury trial was merely preserved when the new lien and replevin actions were created in that statute. Juries in the replevin actions arising out of the liens created in the 1885 statute could access damages and costs. This role, too, was consistent with what juries in other replevin actions had been historically asked to determine.[29] As was the case with replevin jurisdiction, when the 1897 Constitution, therefore, was adopted, a litigant in a replevin action had a right to a jury trial. And the 1897 Constitution provides "[t]rial by jury shall be as heretofore." [30]

In addressing this right to a jury trial in replevin actions, the late Chief Justice Wolcott stated:

> While the right asserted in replevin is on its face a right to possession, nevertheless, it has become over the years a useful method to determine the title to goods and chattels.
>
> * * *

Furthermore, Article I, § 4 of the Delaware Constitution, Del.C.Ann., guarantees the right of trial by jury in such an action, and a deprivation of that right to one or both of the claimants to the property would be in direct violation of the constitutional guarantee.[31]

In that case, the Supreme Court held the Court of Chancery did not have jurisdiction over a guardianship action determining right of possession of a ward's jewelry. The Supreme Court held that since replevin was an adequate remedy at law,

---

**23.** *Id.* at § 5.

**24.** *Constitution of 1831,* Article VI, §§ 1, 3.

**25.** 8 *Del.Laws,* c. 106 § 17.

**26.** *Revised Code of Delaware,* 1852 as amended, c. 92, § 1; *Revised Code of Delaware,* 1852, 1874, c. 106 § 20.

**27.** *In re Gould,* Del.Super., 113 A. 900 (1921).

**28.** 29 *Del.Laws,* c. 256, § 5

**29.** *Supra,* fns. 3, 8, 10–12.

**30.** 1897 *Constitution,* Article 1, § 4.

**31.** *In re Markel,* Del.Supr., 254 A.2d 236, 239 (1969).

the Chancery action should have been transferred to this Court for a jury trial on the issue of possession.[32]

By implication, the 1917 statute conferring concurrent jurisdiction over replevin actions recognized and preserved, in several respects, this historic right to a jury trial. Where the amount in controversy was not more than $200, the jurisdiction with this Court was concurrent.[33] The jurisdictional limit is now $15,000.[34] In one respect, therefore, a litigant could file the original replevin action, within the concurrent monetary limit, in this Court and exercise the right to a jury trial by that choice.

In another respect, the 1917 statute recognized and preserved the right to a jury trial. It provided for appeals to this Court from decisions in Justice of the Peace Courts.[35] Subsequent statutory enactments also provided a right to appeal such decisions to this Court.[36] These appeals to this Court were de novo,[37] which meant there could be a jury trial. It is the availability of a trial de novo before a jury in this Court on appeal which has been recognized for nearly two hundred years as satisfying that constitutional right where there is no jury trial before a Justice of the Peace Court.[38]

The right to a jury trial, either by filing first in this Court or appealing to this Court, was preserved for replevin actions in garagemen's lien cases until 1978.

Within the changing monetary jurisdictional limits over the years, this Court and Justice of the Peace Courts retained their concurrent jurisdiction over all replevin actions from 1917 to 1978. Above those limits, of course, this Court retained its exclusive jurisdiction. But, in 1978, the garagemen's lien statute was amended to add § 3909 to Title 25 providing exclusive original jurisdiction to Justice of the Peace Courts over replevin actions involving garagemen's liens, regardless of the monetary amount claimed.[39] This Court and Justice of the Peace Courts, however, by virtue of 10 Del.C. § 9304, retained their concurrent jurisdictional/exclusive jurisdiction, as before, in all other replevin actions.

From 1978 to 1995, the only way for a litigant to exercise the right to a jury trial for replevin actions in garagemen's lien cases was to appeal to this Court after a decision from a Justice of the Peace. Since 1995, appeals from Justice of the Peace Courts including all replevin actions, go to the Court of Common Pleas.[40] Appeals to the Court of Common Pleas are de novo.[41] But, there are no jury or referee trials in the Court of Common Pleas for appeals of replevin decisions or any other civil cases.[42] Even though appeals were redirected to the Court of Common Pleas, this Court retained its concurrent jurisdiction with Justice of the Peace Courts over all other replevin actions, not involving garagemen's liens, subject to the monetary limits.[43] Above those limits, its exclusive

---

32. *Id.*

33. 29 *Del.Laws*, c. 256 § 5.

34. 10 *Del.C.* § 9304.

35. 29 *Del.Laws*, c. 256 § 13.

36. 10 *Del.C.* § 9641 (1953) as repealed by 69 *Del.Laws*, c. 423 § 14.

37. *Black v. H. Feinberg Furniture Co.*, Del.Super., 3 A.2d 62 (1938).

38. *Wilson v. Oldfield*, Del.Ct.Comm.Pl., 1 Del. Cases 622, 1818 WL 296 (1818); *see Hopkins*

*v. Justice of the Peace Court No. 1*, Del.Super., 342 A.2d 243, 245 (1975).

39. 61 *Del.Laws*, c. 367.

40. 69 *Del.Laws*, c. 423 § 8.

41. 10 *Del.C.* § 9571(c).

42. 10 *Del.C.* § 1327.

43. 10 *Del.C.* § 9304. At the same time appellate jurisdiction was redirected, the only change to the concurrent jurisdiction over

jurisdiction was and is retained.

The effect of the law redirecting appeals to the Court of Common Pleas where they involve garagemen's liens is to extinguish altogether the historic right to a jury trial. As noted, appeals in that court are heard without a jury. Decisions by that court can be further appealed to this Court, but they are heard on the record and are not *de novo*.[44] Therefore, since 1995, a litigant wishing to file a replevin action in a garagemen's lien case would never have the opportunity to have a jury trial. This violates Article 1, Section 4 of the Delaware Constitution. Title 25 *Del.C.* § 3909 is, therefore, unconstitutional.

This holding resolves a statutory anomaly involving replevin actions. Except as to garagemen's lien replevin actions, this Court and the Justices of the Peace Courts exercised concurrent jurisdiction as long as the amount in controversy did not exceed a certain amount. But, the 1978 law granting exclusive jurisdiction had removed that monetary limit just in garagemen lien replevin actions. Since that 1978 enactment is unconstitutional, the situation returns to one of concurrent jurisdiction in the two courts for all replevin actions up to the jurisdictional monetary limit and exclusive jurisdiction in this Court above the monetary limit. That also means, while 25 *Del.C.* § 3909 is unconstitutional, 10 *Del.C.* § 9304, which confers concurrent jurisdiction, remains and provides the means to obtain a jury trial.

*D*

Rossi raises two arguments in support of its claim that this Court has no jurisdiction over replevin actions in garagemen's lien cases. It cites *Elcorta v. Summit Aviation, Inc.*,[45] which simply noted that Justices of the Peace had exclusive jurisdiction over such replevin actions.[46] The issue of § 3909's constitutionality was not raised in that case. It is, therefore, of no precedential value to Rossi.

Its other argument is that a plaintiff in a garagemen's lien replevin action is entitled to a trial by three referees in Justice of the Peace Court. That right was granted from the beginning in the 1917 statute conferring concurrent jurisdiction.[47] Rossi contends that a trial by referee is equivalent to a trial by jury. Part of its contention rests on the history of the right to a jury trial in Justice of the Peace Courts outlined in *Hopkins v. Justice of the Peace Court No. 1*.[48]

The issue in *Hopkins* was that the 1972 rewrite of the Landlord–Tenant Code eliminated the historic right to a jury trial in Justice of the Peace Courts involving proceedings for summary possession. This was found to be unconstitutional.[49] In reaching that result, this Court reviewed the history of jury trials in such proceedings. It noted that the original number of jurors was twelve but that it had been reduced over time to three.[50] The Court mentioned that three-person juries in such proceedings had existed without challenge prior to the adoption of the 1897 Constitution.[51] It found no con-

replevin actions was to raise the monetary claim limit to $15,000. 69 *Del.Laws*, c. 425, § 3.

**44.** 10 *Del.C.* § 1326.

**45.** Del.Super., 528 A.2d 1199 (1987).

**46.** *Id.* at 1203.

**47.** 29 *Del.Laws*, c. 256 § 10.

**48.** Del.Supr., 342 A.2d 243 (1975).

**49.** *Id.* at 247. In response, the legislature amended the Landlord–Tenant Code to provide for a jury trial of six persons. 25 *Del.C.* § 5713.

**50.** *Id.* at 246.

**51.** *Id.*

stitutional infirmity with that reduction in size.[52] The right to a jury trial was preserved, however, even though the number of jurors has been reduced.

Rossi seizes upon the fact that a three-person jury satisfied the Delaware Constitution. It equates a three-person jury to the three-referee system. Rossi's argument is misplaced. First, even in the original 1917 enactment, a majority of two referees can decide a case.[53] This feature was preserved in later enactments.[54] But, in addition, the referees make a "report" to the Justice of the Peace who gives judgment in accordance with the report.[55]

Second, in citing *Hopkins*, Rossi overlooks a key historical fact. That is, prior to the 1897 Constitution, three-person juries in summary possession proceedings were utilized and accepted. The Court in *Hopkins*, in a sense, found this fact to be "tacit" approval of such juries in the adoption of the 1897 Constitution.[56] Unlike that history, however, when the 1897 Constitution was adopted, there was a right to a jury trial in this Court involving any replevin action. There was no trial by referee procedure nor did Justices of the Peace have jurisdiction over replevin actions. The adoption of the 1897 Constitution, therefore, could not be "tacit" or even explicit approval of referee trials as an equivalent of the right to a jury trial. A trial by referee for replevin actions was not even created until the 1917 statute. Finally, in discussing trial by referees, Woolley sums it up best:

> By the Bill of Rights, trial by jury is preserved to all. But if parties, for reasons sufficient to themselves, agree to waive that right, the law provides for them other and sometimes more convenient and satisfactory means of trial. Thus if parties agree, causes involving matters of fact as well as of law, may be tried by the court, or before referees, in which cases judgments are entered upon the decision of the court, or the award of the referees, as upon the verdict of a jury. But the essential of such trials is the waiver of the right of trials by jury and the agreement of parties to try their cause in another manner.[57] [Citations omitted.]

### E

The granting of concurrent jurisdiction in 1917 to this Court and Justice of the Peace Courts may have been done to expedite trials in replevin actions where the monetary issues were less significant. If that were the intent, it is preserved by this Court's holding, since that dual jurisdiction is preserved giving a litigant a choice of courts. Whatever may have been a laudable purpose in the 1978 grant of exclusive jurisdiction, however, cannot overcome the more fundamental right to a jury trial for a litigant who seeks it in a replevin action arising out of a garagemen's lien.

### CONCLUSION

For the reasons stated herein, Title 25 § 3909 is unconstitutional. This Court has jurisdiction over plaintiffs' replevin action. The motion to dismiss of defendant Rossi Auto Body, Inc. is **DENIED**.

---

52. *Id.*

53. 29 *Del.Laws*, c. 256 § 10.

54. 10 *Del.C.* § 9635(b).

55. *Id.*

56. *Hopkins*, 342 A.2d at 246.

57. Woolley on Delaware Practice, § 701.