THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WILLIAM SAMUEL GIBSON, JOSEPH PATRICK NORTON, DEFENDANTS, AND ARTHUR GROSS, DEFENDANT-APPELLANT.

Argued April 5, 1954—Decided May 17, 1954.

*Mr. George F. Losche* argued the cause for the appellant.

*Mr. Harold Kolovsky*, Deputy Attorney-General and Acting Prosecutor of Bergen County argued the cause for the respondent (*Mr. C. William Caruso* on the brief).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment of sanity entered in the Bergen County Court, Law Division, in a proceeding instituted pursuant to *N. J. S.* 2A:163–2 pending the trial of the appellant on an indictment for murder. Certification of this appeal to the trial court was granted because it involves a substantial question under the Constitution of this State which is of general importance and which urgently requires adjudication by this court. *R. R.* 1:10–3.

The appellant, Arthur Gross, was jointly indicted together with two others, William Samuel Gibson and Joseph Patrick Norton, by the Bergen County Grand Jury for the murder

of one Hjalmar Fagerstrom. The indictment charged that on November 24, 1951, at Englewood, the defendants feloniously and of their malice aforethought, killed and murdered Fagerstrom. The murder was committed in the perpetration of a robbery. On December 3, 1952 the indictment was severed as to the defendant Gibson and he entered a plea of *non vult*.

On January 19, 1953 counsel appointed to defend the appellant Gross made an application for a hearing to determine the defendant's ability to be put to trial, alleging that he was unable to comprehend his position and to intelligently consult with counsel and plan his defense. The application came on for hearing before County Judge Vanderwart who granted it and decided that the matter be heard by a jury. A jury was impaneled on February 2, 1953 and a proceeding held pursuant to *N. J. S.* 2*A*:163–2. On February 9, 1953 the jury returned a verdict that the appellant was sane and judgment was entered accordingly. From that judgment this appeal has been taken.

It is argued that Gross is not insane nor was it claimed below that he was insane. The claim advanced is that he is 27 years of age, that he has the mentality of a child six or seven years of age and that he is a mentally deficient person but that the inquiry below concerned itself with his sanity. It should be noted here that it was stipulated below "that the inquiry be confined to the sanity of the defendant."

The rule is that one who is unable to comprehend his position and to consult intelligently with counsel and plan his defense cannot be put to trial. But that does not mean that proof of partial insanity is sufficient to stay the trial. The rule in this State is that the defense of insanity in a criminal cause does not deal with the question of partial insanity and that

"An adult's responsibility for a crime is not measured by a comparison of his mental ability with an infant's, but rather the test is his appreciation of the nature and the quality of his act and the difference between right and wrong in its commission." *State v. Huff*, 14 *N. J.* 240 (1954).

The rule as there stated has been adhered to in this State from the very beginning. *State v. Spencer, 21 N. J. L. 196 (O. and T. 1846)*; *State v. Schilling, 95 N. J. L. 145 (E. & A. 1920)*; *State v. Ehlers, 98 N. J. L. 236 (E. & A. 1922)*; *State v. Auld, 2 N. J. 426 (1949)*.

The proceeding below was in the nature of an inquest of office and collateral in nature, and in such a proceeding the same rule is applied to the facts as they exist. The test is as stated in *State v. Auld, supra, 2 N. J.,* at *page* 435, where it was said:

"One unable to comprehend his position, to consult intelligently with counsel and plan his defense cannot be put to trial. If the condition of a defendant's mind is brought into question in this respect at the time of pleading or at trial, either from observation or at the suggestion of counsel the question should be immediately settled. The Court can itself enter upon the inquiry or submit the question to another jury impaneled for that purpose. *State v. Peacock*, 50 *N. J. L.* 34 (*Sup. Ct.* 1887), reversed on other grounds, 50 *N. J. L.* 653 (*E. & A.* 1888) ; *State v. Noel*, 102 *N. J. L.* 659 (*E. & A.* 1926)."

A charge in practically the identical words was approved in a proceeding such as this in *In re Lang, 77 N. J. L. 207,* 208, 209 (*Sup. Ct.* 1908). See also 1 *Russell on Crimes (9th ed., Greaves), p.* *30 *et seq.*; 1 *Roscoe Criminal Evidence (8th ed.), p.* *199. We have examined the charge below carefully and find it consistent with the law as stated in the decided cases in this State and we find no error therein.

■ The second point of the appellant is that the trial court was in error in treating this as a civil proceeding and permitting the jury to return a verdict by a vote of ten to two. The argument is that this proceeding is a step in the criminal cause and therefore a unanimous verdict should be returned by the jury. The trial court proceeded on the assumption, and correctly we think, that a proceeding under *N. J. S. 2A:163–2* is in the nature of a civil proceeding under the *Constitution of 1947, Art.* I, *par.* 9, as implemented by *N. J. S. 2A:80–2*, which states that in any civil cause

where a jury of 12 shall be impaneled a verdict may be rendered by ten or more of the jury agreeing. This statute implements the provisions of *Art. I, par. 9*, which provides:

"The Legislature may provide that in any civil cause a verdict may be rendered by not less than five-sixths of the jury. The Legislature may authorize the trial of the issue of mental incompetency without a jury."

The proceeding to test the sanity of a criminal defendant after indictment and prior to trial is of ancient origin and has never been considered a criminal proceeding or a step in the criminal cause. It is in the nature of an inquest trying a collateral issue. 1 *Hale* 33; 39 and 40 *Geo. III, c.* 94; 1 *Russell on Crimes (9th ed., Greaves),* p. *30; 1 *Archibold's Criminal Pleading and Practice,* p. 42; 1 *Roscoe Criminal Evidence, supra*; 4 *Chitty Blackstone* *25; 1 *Wharton's Criminal Law (12th ed.), sec.* 76, p. 102; *Nobles v. Georgia,* 168 *U. S.* 398, 18 *S. Ct.* 87, 42 *L. Ed.* 515 (1897).

The proceeding at the common law was in the nature of an inquest to determine the sanity of the defendant and if he were found to be insane, to commit him to an institution for the criminal insane until such time as his sanity returned and he could be put to trial. The statute is in the nature of a commitment and settlement statute. It is for this reason that the early statutory provisions in this State are not found in the statute on criminal procedure. These statutes and our present statute, *N. J. S.* 2A:163-2, differ very little in meaning and purpose from the early English statute, 39 and 40 *Geo.* III, *c.* 94. The sections creating such a proceeding first appeared in this State as part of the statute providing for the erection and maintenance of a state asylum for the insane and criminally insane, *L.* 1847, *Pamph.* 18, *sec.* 28, and with slight modifications as to terminology has been reenacted down to the present time. *Nixon's Digest, p.* 526; *Revision of* 1877, *p.* 612; 2 *Gen. Stat.* (1895), *sec.* 34, *p.* 1987; 3 *Comp. Stat., sec.* 137, *p.* 3211; *R. S.* 2:190-17; *N. J. S.* 2A:163-2.

■ Under the act of 1847 the Circuit Court was invested with jurisdiction to hold such inquest, although by subsequent supplements to the statute concurrent jurisdiction was conferred upon the president judge of the Common Pleas and the justices of the Supreme Court. It is a fact of judicial notice that the Circuit Court under the Constitution of 1844 was not invested with criminal jurisdiction nor was the Common Pleas, and it is therefore concluded that the clear intent of the Legislature was that the proceeding was in the nature of an inquest as it was at common law rather than a step in the criminal proceeding relative to the trial of the indictment. The proceeding has never been a part of the criminal procedure acts of this State, except a provision where a prisoner became insane while under a sentence in the State Prison. This latter provision was originally found in the Criminal Procedure Act of 1898. See the history of the legislation in *In re Lang, supra,* and *In re Herron,* 77 *N. J. L.* 315 (*Sup. Ct.* 1909), where such a proceeding is specifically referred to as an "inquisition."

■ The trial of the issue by a jury at the common law and under the statute has always been discretionary with the court. The issue could be tried by the judge but in cases of great doubt the practice was to impanel a jury. There is no constitutional guarantee of a jury trial in such a situation. *N. J. S.* 2A:163–2 provides, *inter alia*:

"It shall be competent for the judge if sitting without a jury, or the jury, if one is impaneled, to determine not only the sanity of the accused at the time of the hearing, but as well the sanity of the accused at the time the offense charged against him is alleged to have been committed. * * * A finding of sanity at the time of the commission of the offense charged against such person in this proceeding shall not preclude the accused from interposing the defense of insanity at any subsequent trial of the offense charged."

Prior to the adoption of the Constitution of 1947 all jury trials, both civil and criminal, required the unanimous verdict of the jury. In a civil inquisition to determine the insanity of a person a jury trial was mandatory and the matter could not be disposed of by the trial judge in a summary proceed-

ing. *In re McLaughlin,* 87 *N. J. Eq.* 138 (*Ch.* 1917). In similar proceedings under the Constitution of 1947 the matter may be tried by the court without a jury and if the jury is impaneled the jury verdict may be rendered by ten or more of a jury of 12 agreeing. *N. J. S.* 3*A*:6–35; *N. J. S.* 2*A*:80–2; *R. R.* 4:102–6. These provisions are equally applicable to an inquisition such as we have here, where a jury trial was not mandatory either at the common law or under the Constitution. Therefore, we find no error in the verdict of the jury as returned in this case.

▮▮ The appellant seems to further argue that on the trial of the indictment he will be put in jeopardy for the second time. The essential element of a valid plea of double jeopardy is that the record should disclose that the defendant was lawfully convicted or acquitted of an offense for which he was indicted and called upon to answer. No such issue was triable under *N. J. S.* 2*A*:163–2. In fact, as pointed out above, if there is a finding of sanity at the time of the commission of the offense charged against such person in this proceeding, the accused is not precluded from interposing the defense of insanity on the subsequent trial of the indictment. We find the point raised to be without merit.

▮ The appellant raises certain questions with respect to the rejection of evidence in the trial court. Since these questions were not raised there they are not available on this appeal, but we have examined them and found them without merit.

▮ *N. J. S.* 2*A*:163–2 permits the testimony of qualified psychiatrists and *R. S.* 30:4–29 and *L.* 1953, *c.* 29, *sec.* 9, which are *in pari materia,* require that the certificates be signed by a person duly licensed to practice medicine in this State and who holds a degree of doctor of medicine or a license to practice medicine and surgery in this State. Where expert testimony in an action of this type is to be given it must be given by witnesses so qualified.

We find no error in the proceedings and the judgment is therefore affirmed.

WACHENFELD, J. (dissenting). The only inquiry of substance here is whether the insanity of a murderer, practically nullifying his responsibility under the criminal law, is to be determined as in every other criminal case by unanimous verdict of the jury or whether the accused is to be given the advantage and benefit of a 5/6 jury verdict permitted by the Constitution of 1947 in civil cases and implemented by *N. J. S.* 2A:80–2.

The ultimate object of a murder trial is to determine the guilt or innocence of the defendant. Whether he can be put to trial and is answerable is frequently raised by a plea of insanity. This occurred in the instant case and the majority opinion dissects the criminal cause, carves a portion of it from the whole and classifies the section so severed as a civil proceeding while admittedly everything else is criminal.

Such a procedure, in my analysis, is not founded upon either sound logic or intelligent reasoning and its effect on future murder cases, where the jury returns a verdict of insanity, is of the utmost importance.

No one disputes that an indictment for murder is disposed of by a criminal trial. The arrest, the arraignment, the custody, the plea, the presentation to a grand jury, the indictment returned, the plea to that indictment and the motion to quash, if any, the various motions in reference to the indictment, if made, the drawing of a special panel of jurymen to sit at the trial—every detail, every step, every incident, every phase relates to and is part of a criminal cause.

But the majority holds that the framers of the 1947 Constitution and the Legislature, by the passage of *N. J. S.* 2A:80–2, intended to create a state of confusion by co-mingling into one cause a criminal and civil proceeding. This inference is drawn even though the enactment is specifically limited to civil causes.

Its incredibility prevents my accepting such an interpretation.

I see nothing in our Constitution nor in the acts of our Legislature indicating an intent to favor a murderer by permitting him to escape the responsibility for his crime, when a plea of insanity is employed, by a 5/6 vote.

The State has the obligation of convicting a defendant so charged by an unanimous vote, and, by the same token, he should be exonerated only by a like verdict.

The advantage given the accused by the majority opinion was never, in my view, intended by the Legislature and I cannot in conscience be a donor of it.

I would reverse for these reasons.

Mr. Justice HEHER concurs in this dissent.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Justices HEHER and WACHENFELD—2.