**Alvin Richard MILLS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

July 18, 1969.

Carl Schnee and Richard Allen Paul, Asst. Public Defenders, Wilmington, for defendant below, appellant.

John P. Daley, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

WOLCOTT, Chief Justice, and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

This appeal raises the question of the constitutional validity of the statutory procedures (11 Del.C. § 4702) under which the appellant was committed to, and is being held at, the Delaware State Hospital upon a verdict of not guilty by reason of mental illness in a criminal case.

11 Del.C. § 4702(a) provides for commitment to the Delaware State Hospital as follows:

"(a) Upon the rendition of a verdict of 'not guilty by reason of insanity', the Superior Court may, upon motion of the Attorney General, order that the person

so acquitted shall forthwith be committed to the Delaware State Hospital." [1]

And 11 Del.C. § 4702(c) provides for release from such commitment as follows:

"(c) The Superior Court of the county wherein the case has been tried may order that the mentally ill person charged and acquitted, shall be set at large whenever it is satisfied that the public safety will not be thereby endangered, or may order such person to be removed from any such asylum or institution."

In this case, Alvin Richard Mills was tried in the Superior Court on the charge of murder in the second degree and two charges of assault with intent to murder. The verdict of the jury was not guilty by reason of mental illness. On the next day, Mills was committed to the Delaware State Hospital by the Trial Judge under § 4702 (a), without further hearing. In March 1968 and again in July 1968, hearings were held before the Trial Judge upon Mills' application for release from the Hospital under § 4702(c). Both applications were denied. In August 1968, Mills filed a peti-

tion for habeas corpus, again seeking release from the Hospital. The Superior Court denied the petition on October 3, 1968 and Mills appeals.[2]

I.

The appellant contends that § 4702 is unconstitutional for want of due process in that (1) it permits an indeterminate commitment to the State Hospital without a determination of mental illness as of the time of commitment, the verdict of the jury being a determination of mental illness at the time of the commission of the offense and not at the time of the verdict and commitment; and (2) it empowers the Superior Court to release the patient "whenever it is satisfied that the public safety will not be thereby endangered," without requiring a finding of mental illness in conjunction with such danger.

The appellant also contends that § 4702 is unconstitutional in that, as applied to him, it denies him equal protection of the laws because of the differences between § 4702, on the one hand, and 16 Del.C. §§ 5125 and 5126[3], on the other, governing the commit-

---

1. By virtue of 49 Del.L., Ch. 57, the words "mentally ill" are substituted for the word "insane" wherever the latter appears in the Delaware Code; and it is provided that the substituted words "shall have the same legal connotation" that the word "insane" possessed theretofore.

2. This matter was argued before us on June 12, 1969. We note with concern the lapse of time between the filing of the appeal and argument thereon, especially in view of the nature of this case.

3. 16 Del.C. § 5125 provides generally that "no person shall be received as a patient for detention for an indeterminate period of time in the Delaware State Hospital" except upon a certificate "signed by at least 2 medical doctors licensed to practice medicine or surgery in the State that they have examined the person alleged to be suffering from mental illness. If reasonably possible, one of the medical doctors shall be a psychiatrist." § 5125(4) provides the following requisites for such certificate:

"(4) The certificate shall state that such person, in the opinion of the doctors, is

mentally ill in that he has a psychiatric or other disease which substantially impairs his mental health, and because of his mental illness, either (i) he is likely to injure himself or others if allowed to remain at liberty, or (ii) he is in need of care or treatment in a mental hospital and lacks sufficient insight or capacity to make responsible application therefor. The certificate shall set forth a description of the behavior and symptoms which led them to their conclusion."

16 Del.C. § 5126, governing release of a non-criminal from the State Hospital, provides as follows:

"§ 5126. Application to Court of Chancery by committed person for determination of sanity; procedure

"(a) Upon the commitment of any person to the Hospital, the person committed, or any one person related to the person committed within the third degree of consanguinity, or any other three persons, may present a sworn petition to the Court of Chancery at any time, setting forth the time and manner of the commitment and that he or they verily believes or believe the person committed to be a sane per-

ment of non-crimnials to the State Hospital and their release therefrom.

## II.

We address ourselves first to the procedures for commitment to the Hospital under § 4702:

There is a rule of law, long recognized in this jurisdiction and elsewhere, that mental illness once established is presumed to continue until the contrary is established and the presumption is satisfactorily rebutted. E. g., Duffield v. Robeson, 2 Har. 375 (1838); Armstrong v. Tinnons, 3 Har. 342 (1841); State v. Brown, Houst Cr.Cas. 539 (1878); State v. Jack, 4 Penn. 470, 58 A. 833 (1903); Annotation, 27 A.L.R.2d 121.

This presumption of continuing mental illness is particularly apposite in this State by reason of our adherence to the rule that, upon the plea of mental illness as a defense in a criminal case, the defendant has the burden of proving his mental illness to the satisfaction of the jury by a preponderance of the evidence; and that acquittal on the ground of mental illness may not result from reasonable doubt of mental condition, as in some jurisdictions, but only from a specific adjudication by the jury of mental illness at the time of the offense. See 11 Del.C. § 4701 requiring that mental illness, as a defense in a criminal case, be "established to the satisfaction of the jury impaneled on the trial"; Longoria v. State, Del.Sup., 3 Storey 311, 168 A.2d 695 (1961); Quillen v. State, Del.Sup., 10 Terry 114, 110

A.2d 445 (1955). In this respect, our rule differs from that prevailing in federal courts and in many states whereunder the accused is entitled to an acquittal if, upon all the evidence, there is a reasonable doubt whether he was capable in law of committing the crime. In those jurisdictions, a verdict of not guilty by reason of insanity must be reached even if the evidence of mental responsibility at the time of the offense raises no more than a reasonable doubt of sanity. See, e. g., Lynch v. Overholser, 369 U.S. 705, 715, 82 S.Ct. 1063, 1069, 8 L.Ed.2d 211 (1962); Wharton, Criminal Evidence, §§ 211, 906. In this jurisdiction, on the other hand, the verdict and judgment of acquittal by reason of insanity amounts to an actual adjudication of mental illness at the time of the offense —a very solid basis upon which the presumption of continuing mental illness may rest. This difference in the fundamental nature of the verdict of acquittal by reason of insanity makes inapposite the cases in which the presumption is not recognized. E. g., Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968).

We hold that the presumption of continuing mental illness applies to a commitment under § 4702. By application of that presumption and by virtue of the jury's adjudication of mental illness at the time of the commission of the offense, a commitment is constitutionally permissible under § 4702(a) without the subsequent hearing and determination of mental illness at the time of commitment which may have otherwise been required by due process

---

son, and praying that a writ issue to the sheriff of the county to determine whether the person committed be a sane or an insane person.

"(b) The Court shall thereupon forthwith make an order directing the Register in Chancery to forthwith issue a writ de lunatico inquirendo to the sheriff of the count, commanding him within five days after the service of the writ to summon a jury, and have determined by the jury whether the person committed be a sane or an insane person, and make return of the same to the court within two days after the finding thereof by the jury.

"(c) If the finding of the jury be that the person committed is a sane person, the sheriff shall forthwith make an order upon the Superintendent of the Hospital, and, if he be absent, upon any official of the Hospital, commanding that the person therein committed be immediately released from the Hospital.

"(d) Commitment of any person to the Hospital shall not raise any presumption against the sanity of the person therein committed. The provisions of this section shall inure to the advantage of persons confined in the Hospital without regard to the date of commitment."

and equal protection of the law. See Hurt v. United States (8 Cir.) 327 F.2d 978 (1964); Kitchens v. United States (10 Cir.) 272 F.2d 757 (1959); Orencia v. Overholser, 82 U.S.App.D.C. 285, 163 F.2d 763 (1947); People v. Lally, 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966); 21 Am.Jur.(2d) "Criminal Law" § 56; Annotation, 145 A.L.R. 892.

This question arises in weighing the above rule: If the mental illness determined by the jury to exist at the time of the commission of the offense, is presumed to continue, is .it not presumed to continue during the trial period and is not the entire conviction thereby tainted by the incompetency of the defendant to stand trial? The answer lies in the difference between the mental illness which precludes responsibility for crime and the mental illness which precludes trial. While the ability to distinguish between right and wrong is the test of responsibility for crime, Longoria v. State, Del.Sup., 3 Storey 311, 168 A.2d 695 (1961), the defendant's ability to understand the proceedings against him and properly to assist in his own defense are the test of competency to stand trial. E. g., State v. Gibson, 15 N.J. 384, 105 A.2d 1, 42 A.L.R.2d 1461 (1954); Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725 (1957). It is conceivable, of course, that a defendant's mental illness is of such type and nature to make him unaccountable in the eyes of the law for the crime charged, and yet he may be quite capable mentally to understand the nature of the charges against him and to assist in his own defense. In the absence of any showing to the contrary, this difference permits the operation of the presumption of continuing mental illness from the time of the offense through the period of the trial to the time of commitment, without invaliding the trial and conviction by reason of incompetency of the defendant.

We have tested the application of the presumption of continuing mental illness in this case against the Equal Protection Clause and the Due Process Clause; we find it consonant with both:

Equal protection of the laws does not require that all persons be dealt with identically; it does require that a distinction must have some relevance to the purpose for which the classification is made. Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966). Thus, equal protection does not require that the appellant here must have the same procedural safeguards for commitment (the certificates of two physicians) as pertain to one civilly committed under 16 Del.C. § 5125, so long as there is reasonable basis for the distinction made. We find such reasonable basis for distinction in the judicial determination by judge and jury of the mental illness of a § 4702 patient. This is a safeguard against improvident commitment of a higher order than the two certificates required for a civil commitment. The difference between a patient civilly committed, on the one hand, and a patient committed as the result of a criminal proceeding in which his mental illness has been adjudicated, on the other, warrants the difference in the procedures for commitment we hereby approve, without infringement upon the equal protection guaranty.

Nor may the presumption we here apply be said to offend against due process of law. The United States Congress recognized the fairness of this presumption, as a counterbalance for the protection of the public, when in enacting a similar Statute for the District of Columbia in 1955, there was incorporated in the reports of the Senate and the House Committees the following statement:

" * * * Where accused has pleaded insanity as a defense to a crime, and the jury has found that the defendant was, in fact, insane at the time the crime was committed, it is just and reasonable * * * that the insanity once established, should be presumed to continue and that the accused should automatically be confined for treatment until it can be shown that he has recovered."

The United States Supreme Court noted the above statement in Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 1070–1071, 8 L.Ed. 2d 211 (1962); and commenting thereon stated at 1069–1070:

> "Congress might have thought * * * that having successfully claimed insanity to avoid punishment, the accused should then bear the burden of proving that he is no longer subject to the same mental abnormality which produced his criminal acts. Alternatively, Congress might have considered it appropriate to provide compulsory commitment for those who successfully invoke an insanity defense in order to discourage false pleas of insanity."

■ We hold that in adjusting the delicate balance between a society's right to be protected from potentially mental ill and dangerous individuals, on the one hand, and the individual's right to be protected from improvident confinement on the other, it was not a denial of due process to commit the appellant under § 4702(a) by virtue of the presumption of continuing mental illness and the jury's verdict, without a separate hearing and determination as to present mental condition. See People v. Dubina, 304 Mich. 363, 8 N.W.2d 99, 145 A.L. R. 886 (1943); Annotation, 145 A.L.R. 892.

When clothed with this presumption, and when supplemented by the release remedy of § 4702(c) as hereinafter construed, we conclude that § 4702(a) satisfies the requirement of equal protection and due process. The appellant was properly committed thereunder.

### III.

Turning now to the release procedures prescribed by § 4702(c): We find no saving presumption when we test the release provisions of § 4702(c) against the Equal Protection Clause and against 16 Del.C. § 5126 which establishes procedures for the release of civilly committed patients. The § 4702 patient and the § 5125 patient have the same status in the State Hospital as patients to be treated and cured. The fact that the § 4702 patient had been charged with crime is not a reasonable basis for distinguishing him from the § 5125 patient in the procedures for determining the cessation of his mental abnormality and his qualification for release from the Hospital. Both are subject to the same definition of "dangerous mentally ill person"; i. e., "a person so mentally ill as to be likely to cause injury to himself or others and to require immediate care, treatment or restraint." Compare 16 Del.C. § 5122(a) (i); § 5125(4); § 4702 (c).[4]

■ In the absence of a reasonable basis for distinction, we hold that it is a denial of equal protection of the laws to deprive a § 4702 patient of the substantial safeguards provided by § 5126 for a § 5125 patient as to release from the Hospital. The essential safeguard provided by § 5126 to a patient civilly committed is jury trial of the issue of present mental illness. We think that equal protection of the laws requires that a § 4702 patient have a similar right. See Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966); Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 1070–1071, 8 L.Ed.2d 211 (1962); People v. Lally, 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966); Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F. 2d 642 (1968). Because we find no rational justification for withholding from a § 4702 patient the safeguard of jury trial of the issue of present mental illness, we construe § 4702(c) to require jury trial of that issue.

4. In this connection, it is to be noted that § 4702(c) refers to danger to the public safety without express reference to mental illness. By necessary implication, the danger referred to must be construed to relate to mental illness for the reason that dangerousness without mental illness could not be a valid basis for indeterminate confinement in the State Hospital. See Overholser v. O'Beirne, 112 U.S.App.D.C. 267, 302 F.2d 852, 854–855 (1962); Starr v. United States, 105 U.S. App.D.C. 91, 264 F.2d 377, 382–383 (1958); Newton v. Brooks 246 Or. 484, 426 P.2d 446 (1966).

If this appears to be a strained construction of § 4702(c), it is to be remembered that a strained construction of a statute is permissible to save it against constitutional attack so long as the construction is not carried "to the point of preventing the purpose" of the statute. Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 1477, 6 L.Ed.2d 782 (1961). The purpose of § 4702 (c) is not perverted by the jury trial we require. Our view in this connection is supported by Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 296–297, 76 L.Ed. 598 (1932), where the Court held that since the Congress had not expressly provided otherwise, a statute should be read as affording a *de novo* judicial determination of jurisdictional facts; and by Yamataya v. Fisher, 189 U.S. 86, 94, 99, 23 S.Ct. 611, 612–614, 47 L. Ed. 721 (1903), where the Court held that a hearing was required even though the statute simply authorized the Secretary of the Treasury to deport an immigrant whenever the Secretary was "satisfied that [the] immigrant [had] been allowed to land contrary to [applicable law]." By analogous reasoning, we are able to save § 4702(c). That Statute empowers the Superior Court, and not a judge thereof, to make the necessary determination for release of the patient. There is nothing in § 4702(c) inconsistent with a jury trial. Accordingly, reading the right of jury trial into the Statute is permissible. See Annotation, 95 A. L.R.2d 54.

■ But the Equal Protection Clause does not require for a § 4702 patient such procedural antiquities as the § 5126 *writ de lunatico* and sheriff's jury. The difference in circumstances warrants a difference in procedures to this extent: the jury trial to be held under § 4702(c) shall be (1) before a regular Superior Court jury; (2) to try the issue of whether the patient is a "dangerous mentally ill person", within the definition of § 5122(a) (i); and (3) with the burden of proof upon the patient to prove by a preponderance of the evidence freedom from such mental illness and dangerous propensities. The burden of proving that he is no longer subject to the mental abnormality which produced his criminal act is a fair and reasonable distinction, although a civilly committed patient would have no such burden under § 5126, in view of the fact that the § 4702 patient had successfully proved his own mental illness to the satisfaction of a jury.

For the reasons stated, we hold that the appellant was entitled to a jury trial, in accordance with the above guidelines, upon his application for release under § 4702(c). Failure to accord him such trial constituted a denial of his constitutional rights. He is entitled to such trial now.

We do not intend to say that a jury issue necessarily exists in every case in which a petition for release is filed under § 4702(c). It is conceivable that a patient is unable to produce any competent evidence to sustain his burden of proof; or that the State is unable to adduce any competent evidence of present mental illness and is willing to waive hearing. In such event, there would be no issue for submission to the jury and the Court would be free to dispose of the matter without intervention of jury.

In view of these conclusions, we do not reach the other grounds of appeal.

■ A writ of habeas corpus is not available to the appellant because, as we have held, his commitment under § 4702(a) was valid; and because the statutory remedy provided by § 4702(c), as herein construed, is adequate and available to the appellant to test the legality of his continued detention. See Curran v. Woolley, 9 Terry 382, 104 A.2d 771 (1954). Accordingly, the denial by the Superior Court of the petition for a writ of habeas corpus is affirmed, with leave to the appellant to renew his application under § 4702(c) as herein construed. The cause is remanded for further proceedings consistent herewith.