### In the Matter of Dio W. LEWIS.

Supreme Court of Delaware.

Submitted June 15, 1979.

Decided Aug. 21, 1979.

Bettina C. Ferguson, Wilmington, for appellant, petitioner.

Matthew J. Lynch, Jr., Deputy Atty. Gen., Wilmington, for appellee, respondent.

Before DUFFY, McNEILLY and QUILLEN, Justices.

McNEILLY, Justice:

Appellant challenges the constitutional validity of the statutory procedures (11 *Del.C.* § 403) by which he was committed and is being held at the Delaware State Hospital following a determination by a Trial Judge of the Superior Court that appellant was not guilty by reason of insanity in a criminal case.

11 *Del.C.* § 403(a) provides for commitment to the Delaware State Hospital as follows:

"Upon the rendition of a verdict of 'not guilty by reason of insanity,' the court shall, upon motion of the Attorney General, order that the person so acquitted shall forthwith be committed to the Delaware State Hospital."

11 *Del.C.* § 403(b) provides for release from such commitment as follows:

"A person committed to the Delaware State Hospital in accordance with subsection (a) shall be kept there until the Superior Court of the county wherein the case was tried is satisfied that the public safety will not be endangered by his release. The Superior Court shall without special motion reconsider the necessity of continued detention of a person thus committed after he has been detained for 1 year. It shall thereafter reconsider his detention upon motion on his behalf or whenever advised by the State Hospital that the public safety will not be endangered by his release."

## I

Following his indictment for sexual assault and kidnapping, appellant entered a plea of not guilty by reason of insanity. Appellant stipulated to facts constituting a prima facie case and in April 1975, a hearing was held on the issue of his mental condition at the time of the offenses. At the conclusion of the hearing the Trial Judge determined that appellant was not guilty by reason of insanity and ordered appellant's immediate commitment to the Delaware State Hospital.

In November 1977 a hearing was held before the Trial Judge upon appellant's application for release from the Hospital pursuant to 11 *Del.C.* § 403(b).[1] His application was denied and in October 1978, appellant filed a petition for a writ of habeas corpus, again seeking release from the Hospital. The Superior Court denied the petition on January 5, 1979, and this appeal followed.

In regard to his initial commitment pursuant to 11 *Del.C.* § 403(a), appellant contends that he was denied due process of law in that he was not afforded a judicial determination, with accompanying procedural safeguards, as to the existence of any mental illness at the time of his commitment. He also contends that his initial commitment pursuant to 11 *Del.C.* § 403(a) was a denial of equal protection of the law because of the differences between § 403(a) and 16 *Del.C.* § 5125 (1953) (repealed by 60 Del.Laws, c. 95, § 2, effective July 1, 1975), the involuntary civil commitment statute in effect at the time of appellant's initial commitment.

In regard to his continued confinement pursuant to 11 *Del.C.* § 403(b), appellant contends that § 403(b) denies him due process of law because the criteria for release in § 403(b) are so vague as to be void and because § 403(b) fails to require that the Superior Court's determination concerning an insanity acquitee's dangerousness be related to mental illness. He also contends that his continued confinement under 11 *Del.C.* § 403(b) denies him equal protection of the law because of the differences between the release procedures of § 403(b) and the release procedures provided in 16 *Del.C.* Ch. 50, now governing involuntary civil commitments to the Delaware State Hospital.

Appellant's arguments are essentially the same as those presented to this Court in *Mills v. State,* Del.Supr., 256 A.2d 752 (1969), challenging the constitutionality of the insanity acquittal commitment procedures codified in 11 *Del.C.* §§ 4702(a), (c) (1953) (repealed by 58 Del.Laws, c. 497, § 2, effective April 1, 1973).[2] For purposes of analysis in this appeal, our present code provisions of 11 *Del.C.* § 403 are equivalent to the provisions of § 4702 which were considered in *Mills.*

## II

■ Focusing first on the commitment procedure of 11 *Del.C.* § 403(a), we find no merit to either the due process or equal protection arguments posed by the appellant. As in *Mills,* our conclusion is based in part on the presumption that mental illness which a defendant has alleged and proven by a preponderance of the evidence to have existed at the time he performed the criminal acts, continues until such time as the presumption is satisfactorily rebutted. 256 A.2d, at 755.

---

1. Although 11 *Del.C.* § 403(b) requires the Superior Court to consider the necessity of continued detention after one year, appellant had been on escape status for approximately eight months, thereby delaying the review.

2. 11 *Del.C.* §§ 4702(a), (c) (1953) provided:

"(a) Upon the rendition of a verdict of 'not guilty by reason of insanity,' the Superior Court may, upon motion of the Attorney General, order that the person so acquitted shall forthwith be committed to the Delaware State Hospital."

\* \* \* \* \* \*

"(c) The Superior Court of the county wherein the case has been tried may order that [a mentally ill] person charged and acquitted, shall be set at large whenever it is satisfied that the public safety will not be thereby endangered, or may order such person to be removed from any such asylum or institution."

". . . [E]qual protection does not require that the appellant here must have the same procedural safeguards for commitment (the certificates of two physicians) as pertain to one civilly committed under 16 *Del.C.* § 5125, so long as there is a reasonable basis for the distinction made. We find such reasonable basis for distinction in the judicial determination by judge and jury of the mental illness of a § 4702 patient. This is a safeguard against improvident commitment of a higher order than the two certificates required for a civil commitment."[3] 256 A.2d, at 756.

Public policy considerations yield another reasonable distinction between insanity acquitees and involuntary civil commitees for purposes of initial commitment:

". . . [T]he finding by the jury that a defendant, because of his mental disease or defect, shall be held blameless for an act otherwise subject to criminal sanctions puts such a defendant into an exceptional class. The special interest which the public has acquired in the confinement and release of people in this exceptional class results from the fact that there has been a judicial determination that they have already endangered the public safety and their own as a result of their mental conditions as distinguished from people civilly committed because of only potential danger." *Chase v. Kearns,* Me.Supr., 278 A.2d 132, 138 (1971).

Appellant argues that 16 *Del.C.* Ch. 50, governing involuntary commitments to the Delaware State Hospital, supports his proposition that there is no rational distinction between insanity acquitees and involuntary civil commitees for purposes of their initial commitment procedures. Appellant asserts that, under the definition of a "mentally ill person" provided in 16 *Del.C.* § 5001(1), the class of persons suffering from a mental disease or condition which "poses a real and present threat, based upon manifest indica-

tions, that such person is likely to commit . . . serious harm to . . . others", necessarily includes insanity acquitees, thereby requiring commitment procedures for insanity acquitees identical to those afforded involuntary civil commitees. *See* 16 *Del.C.* § 5001(1). In support of his argument, appellant cites *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); and, *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972).

We reject this argument based on the observation of the Supreme Judicial Court of Maine: That insanity acquitees constitute an "exceptional class" because "they have already endangered the public safety . . . as a result of their mental conditions as distinguished from people civilly committed because of only potential danger." *Chase,* 278 A.2d, at 138. Although the definition of a "mentally ill person" provided in 16 *Del.C.* § 5001(1) appears broad enough to include insanity acquitees for purposes of potential future behavior, it fails to account for this one important distinction based on past conduct, i. e., insanity acquitees have performed acts which, but for the existence of a mental disease or defect that the time of the acts, would otherwise have subjected them to criminal sanctions. These past criminal acts are sufficient to justify the procedural differences in initial commitment between the two groups. Furthermore, *Baxstrom, Humphrey,* and *Jackson* are inapposite because none of the three dealt with the constitutional validity of procedures for initial commitment of an insanity acquitee.

██ We also reject appellant's contention that he was denied due process of law in that he was not afforded a judicial determination, with accompanying safeguards, as to the existence of any mental illness at the time of his commitment. As in *Mills,* "[w]e hold that in adjusting the delicate balance between a society's right to be protected

---

**3.** 16 *Del.C.* § 5125 (1953) was superceded by the provisions of 16 *Del.C.* Ch. 50, governing involuntary civil commitments. 16 *Del.C.* Ch. 50 contains numerous procedural safeguards which were not available to involuntary civil commitees under former code provision § 5125. *See, e. g.,* 16 *Del.C.* § 5006.

from potentially mental ill and dangerous individuals, on the one hand, and the individual's right to be protected from improvident confinement on the other, it was not a denial of due process to commit the appellant" under § 403(a) without a separate hearing of the type provided involuntary civil commitees pursuant to 16 *Del.C.* § 5006.[4] *See Mills, supra; Chase, supra; People ex rel. Henig v. Commissioner of Mental Hygiene,* N.Y.Ct.App., 43 N.Y.2d 334, 372 N.E.2d 304 (1977); *State ex rel. Schopf v. Schubert,* Wis.Supr., 45 Wis.2d 644, 173 N.W.2d 673 (1970); *State v. Marzbanian,* Conn.Cir., 2 Conn.Cir. 312, 198 A.2d 721 (1963).

Unlike the involuntary civil commitee who generally denies the existence of the mental condition for which he is committed, the insanity acquitee has been provided a judicial hearing at which he has alleged and proven by a preponderance of the evidence the very mental condition which he has manifested in past criminal action and for which, by reason of the presumption of continuing mental illness, he is committed. We believe this provides a rational basis for the insanity acquitee's immediate commitment. Moreover, "[n]othing in § 403 is meant to limit the right of the committed person or someone acting on his behalf to move the Court for release *at any time.*" Delaware Criminal Code with Commentary, Commentary on § 403 (1973) (emphasis added). Thus, the insanity acquitee's right to move the Court for his release at any time

following his initial commitment is an additional safeguard which provides him with an adequate opportunity to rebut the presumption of his continuing mental illness. *Compare State v. Krol,* N.J.Supr., 68 N.J. 236, 344 A.2d 289 (1975) *and People v. McQuillan,* Mich.Supr., 392 Mich. 511, 221 N.W.2d 569 (1974) (which permit immediate temporary commitment subject to a subsequent hearing on present mental condition).

■ And finally, although 11 *Del.C.* § 403(a) provides that ". . . the court shall, upon motion of the Attorney General, order that the [insanity acquitee] shall forthwith be committed . . .", the statute does not preclude the Court from ordering immediate commitment upon its own motion where the circumstances warrant it, as the Court in the instant case did.

### III

We now turn to the release procedures provided in 11 *Del.C.* § 403(b).

■ Appellant argues that he has been denied equal protection of the law because of the difference in release procedures afforded insanity acquitees under § 403(b) and those afforded involuntary civil commitees under 16 *Del.C.* Ch. 50. He asserts that there is no reasonable distinction between insanity acquitees and involuntary civil commitees which would require prior judicial approval for release of an insanity acquitee, whereas a civilly committed patient may be released without prior judicial

---

**4.** 16 *Del.C.* § 5006 provides:

"A person whom the hospital has determined to be a mentally ill person shall be entitled:

(1) To notice (including a written statement) of the factual grounds upon which the proposed hospitalization is predicated and the reasons for the necessity of confinement;

(2) To hearings before the court and to judicial determinations of (i) whether the involuntary patient's confinement is based upon probable cause and (ii) whether or not the involuntary patient is a mentally ill person. Such hearings shall be without jury and not open to the public, shall be preceded by adequate notice to the involuntary patient, and the involuntary patient shall be entitled to be present at all such hearings;

(3) To be represented by counsel at all judicial proceedings, such counsel to be court appointed if the involuntary patient cannot

afford to retain counsel; and to be examined by an independent psychiatrist or other qualified medical expert and to have such psychiatrist or other expert testify as a witness in his behalf, such witness to be court appointed if the involuntary patient cannot afford to retain such witness.

(4) To conduct discovery, to summon and cross-examine witnesses, to present evidence on his own behalf and to avail himself of all other procedural rights afforded litigants in civil causes. The privilege against self-incrimination shall be applicable to all proceedings under this chapter.

(5) To have a full record made of the proceedings, including findings adequate for review. All records and pleadings shall remain confidential unless the court for good cause orders otherwise."

approval upon a determination by the Delaware State Hospital that he is no longer mentally ill. *See* 16 *Del.C.* § 5009.

In *Mills,* this Court held:

"In the absence of a reasonable basis for distinction, . . . it is a denial of equal protection of the laws to deprive a § 4702 patient of the substantial safeguards provided by § 5126 for a § 5125 patient as to release from the Hospital. The essential safeguard provided by § 5126 to a patient civilly committed is jury trial of the issue of present mental illness. We think that equal protection of the laws requires that a § 4702 patient have a similar right. See *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966); *Lynch v. Overholser,* 369 U.S. 705, 82 S.Ct. 1063, 1070–1071, 8 L.Ed.2d 211 (1962); *People v. Lally,* 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966); *Bolton v. Harris,* 130 U.S.App. D.C. 1, 395 F.2d 642 (1968). Because we find no rational justification for withholding from a § 4702 patient the safeguard of jury trial of the issue of present mental illness, we construe § 4702(c) to require jury trial of that issue." 256 A.2d, at 757.

We reject appellant's argument that he is denied equal protection of the law because of the different release procedures afforded involuntary civil commitees under 16 *Del.C.* Ch. 50. Where an involuntary civil commitee's application for release is contested by the Delaware State Hospital, he is entitled to a judicial determination of his present mental condition. *See* 16 *Del.C.* §§ 5006, 5008, 5010, 5012. However, as to the civil commitee, such determination ". . . shall be without jury and not open to the public. . . ." 16 *Del.C.* § 5006. On the other hand, 16 *Del.C.* § 5009 permits the Hospital to release, without a prior judicial determination, an involuntary civil commitee upon determining and certifying that the commitee is no longer mentally ill. We hold that such administrative release procedure *is inapplicable to insanity acquitees* committed to the Delaware State Hospital.

Appellant contends that the following language in *Mills* mandates a contrary holding:

"The § 4702 patient and the § 5125 patient have the same status in the State Hospital as patients to be treated and cured. The fact that the § 4702 patient had been charged with crime is not a reasonable basis for distinguishing him from the § 5125 patient in the procedures for determining the cessation of his mental abnormality and his qualification for release from the Hospital." 256 A.2d, at 757.

At first glance the language appears to support appellant's argument. But a closer look at *Mills* reveals that the Court was concerned only with differing statutory *judicial* procedures for release. The *Mills* Court was not confronted with the applicability of a statutory *administrative* procedure for release, such as 16 *Del.C.* § 5009. Accordingly, we see no conflict in our present holding with that in *Mills.*

"The responsibility and burden of determining whether to release an insanity acquitee, who implicitly has been found to have committed the criminal acts for which he was tried, need not be abdicated by the judiciary and left entirely to the psychiatric community. We find judicial approval to have a rational basis in that such requirement will both provide to the public additional assurance against premature releases of the dangerously mental ill and safeguard the due process rights of the insanity acquitee by fostering an even-handed application of the standards for discharge . . . ." *Lee v. Kolb,* W.D.N.Y., 449 F.Supp. 1368, 1381, *vacated,* 2 Cir., 591 F.2d 1330 (1978).

Moreover, the appellant is not denied equal protection of the law because, as we have noted previously, insanity acquitees form an "exceptional class" based upon their past commission of criminal acts. This past conduct justifies a greater role by the courts in determining whether the public safety will be endangered by the release of insanity acquitees. *United States v.*

*Ecker,* D.C.Cir., 177 U.S.App.D.C. 31, 543 F.2d 178 (1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977); *Powell v. Florida,* 5 Cir., 579 F.2d 324 (1978).

Appellant also contends that he is denied due process of law because the criteria for release in § 403(b) are so vague as to be void and because § 403(b) fails to require that the Superior Court's determination as to an insanity acquitee's dangerousness be related to mental illness.

"By necessary implication, the danger referred to must be construed to relate to mental illness for the reason that dangerousness without mental illness could not be a valid basis for indeterminate confinement in the State Hospital." *Mills,* 256 A.2d, at 757 n.4. Moreover, the requirement of § 403(b) that the Superior Court be "satisfied that the public safety will not be endangered by [the insanity acquitee's] release" is constitutionally permissible. By reference to the definition of a "mentally ill person" in the involuntary commitment statute, we construe that phrase to mean "that such person is (not) likely to commit . . . serious harm to . . . others or to property . . . ." 16 *Del.C.* § 5001(1); *see also Lee v. Kolb, supra.*

### IV

In conclusion, we hold that a writ of habeas corpus is unavailable to appellant because his initial commitment under 11 *Del.C.* § 403(a) was proper and because the statutory remedy provided by 11 *Del.C.* § 403(b) is adequate and available to him to test the legality of his continued confinement.[5]

AFFIRMED.

---

5. The insanity acquitee's right to trial by jury under the state of the law governing the civil commitee's release procedure at the time or

*Mills* is not raised here and requires no discussion.